**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **BAYLOR COUNTY HOSPITAL DISTRICT d/b/a SEYMOUR HOSPITAL,** | § § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No. 7:15-cv-00053-O** |
| **SYLVIA MATHEWS BURWELL IN HER CAPACITY AS SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | § § § § § | |
| **Defendant.** | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment and Brief in Support (ECF Nos. 19–20), filed October 15, 2015; Plaintiff's Consolidated Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment ("Cross-Motion & Resp.") and Brief in Support (ECF Nos. 21–22), filed November 16, 2015; Defendant's Consolidated Response to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Her Motion for Summary Judgment ("Resp. & Reply") (ECF No. 26), filed December 7, 2015; and Plaintiff's Reply Brief in Support of its Cross Motion for Summary Judgment ("Reply") (ECF No. 27), filed December 22, 2015.  Having considered the Motions, related briefing, and applicable law, the Court finds that Defendant's Motion for Summary Judgment should be **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment should be **DENIED**.

## I.    BACKGROUND

The following facts are primarily taken from Plaintiff's First Amended Complaint for Judicial Review of Final Adverse Agency Decision on Critical Access Hospital Status. Am. Compl., ECF No. 25. Title XVIII of the Social Security Act establishes the Medicare Program ("Medicare"), which provides federal health insurance benefits to most persons over age 65 and to younger persons with certain disabilities. *Id*. ¶ 7. The Centers for Medicare and Medicaid Services ("CMS") is the federal agency responsible for administering Medicare. *Id*. Plaintiff Baylor County Hospital District ("Baylor") is a Medicare-certified provider of services within the meaning of 42 U.S.C. § 1395x(u) and operates Seymour Hospital, located in the rural area of Seymour, Texas. *Id*. ¶ 2.

The Medicare Rural Hospital Flexibility Program provides for the designation of certain health care facilities as Critical Access Hospitals ("CAHs"). *Id*. ¶ 8 (citing Balanced Budget Act of 1997, Pub. L. 105-33 § 4201, codified at 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I) (hereinafter "§ 1395i-4")). The CAH designation was created to ensure that Medicare beneficiaries are able to access hospital services in rural areas by providing for greater Medicare payments to CAH-designated hospitals. Am. Compl. ¶ 8, ECF No. 25. To qualify for CAH status, § 1395i-4 requires that a hospital be "located more than a 35-mile drive (or in the case of mountainous terrain or in areas with only secondary roads available, a 15-mile drive) from a hospital . . . ." *Id*. ¶ 9, ECF No. 25 (quoting § 1395i-4.) Neither § 1395i-4 nor the accompanying administrative regulations, codified at 42 C.F.R. § 485.610(c), define "primary" or "secondary" roads. *Id*. ¶ 10. In 2007, CMS published its State Operations Manual ("SOM"), which interpreted "primary road" to be: "(1) a numbered federal highway; (2) a numbered state highway with two or more lanes in each direction; or (3) a road that is shown as a primary highway divided by a median strip on a map prepared in accord with the U.S. Geological Survey standards." *Id*. (citing SOM, Pub. No. 199-07, Chapter 2, § 2256A). The SOM

2

does not include a definition for "secondary" road. *Id*. Roads that do not qualify as "primary" roads are treated as "secondary" roads. *Id*.

Seymour Hospital is located 31.8 miles from a hospital in Throckmorton, Texas, and thus fails to meet the 35-mile distance requirement. *Id*. ¶ 14, ECF No. 25. Only one road connects the two hospitals. *Id*. ¶ 15. The road has only "one lane in each direction and no median strip, no passing lanes and no paved shoulders." *Id*. However, approximately 28.4 miles of the road is designated as U.S. Highway 183/283. *Id*. ¶ 16. CMS therefore designated the road as "primary" because it carries a federal, not state, highway designation, and does not meet the lesser 15-mile requirement when only secondary roads are available. *Id*.

Baylor contends that "[i]f the road had a *state* rather than a federal highway designation, it would be considered a 'secondary' road and the 15 mile distance test would be satisfied" because for "a state highway to be considered a 'primary' road under CMS's policy interpretation, it would have to have two or more lanes in each direction or have a median strip," which U.S. Highway 183/283 lacks. *Id*. ¶ 16 (emphasis added). Baylor argues that the Secretary wrongly denied Seymour Hospital CAH status, relying on an arbitrary rule that ignores the weight that § 1395i-4 and the accompanying regulation afford to qualitative differences between primary and secondary roads. *See id.* ¶¶ 11, 22.

CMS denied Baylor's original application for CAH status in 2013, and again upon reconsideration two months later. *See* Def.'s Br. Supp. Mot. 7, ECF No. 20 (citing CMS Letter to Seymour Hospital ("CMS Letter") App. 17, ECF No. 18). Baylor appealed CMS's decision to the Departmental Appeals Board Civil Remedies Division ALJ ("the ALJ"), asserting that CMS's policy interpretation conflicts with the language and intent of § 1395i-4. Am. Compl. ¶ 17, ECF No. 25.

3

The ALJ granted summary judgment in favor of CMS, ruling that the Secretary's policy determination was reasonable. *Id.* ¶ 19. Plaintiff appealed the ALJ's decision to the Department Appeals Board Appellate Division ("the DAB"), which has final review authority over the reconsideration and appeal process for the Secretary's determinations.[1] *Id.* ¶ 20; *see also* Def.'s Resp. Pl.'s Mot. & Reply Mot. 8, ECF No. 26. The DAB affirmed the ALJ decision on January 21, 2015, ruling that CMS could "reasonably require that state highways and undesignated roads be treated as equivalent to federal highways only when they demonstrated specific characteristics typical of *most* federal highways." Am. Compl. ¶ 20, ECF No. 25. Baylor has exhausted its administrative remedies and now brings the above-styled action pursuant to 42 U.S.C. § 1395cc(h), 42 U.S.C. § 405(g), and 5 U.S.C. § 701–06, asserting that the Secretary's final decision affirming CMS's interpretation was in error. *Id.* ¶¶ 21–22.

## II.    LEGAL STANDARD

### A.    Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the

---

[1] The parties do not dispute that the DAB represents the Secretary's final decision, leaving no further steps for administrative review. *See, e.g.*, Am. Compl. ¶¶ 20–21, ECF No. 25; Def.'s Br. Supp. Mot. 18, ECF No. 20 ("The Secretary's formal adjudication process allows program participants to challenge CMS's interpretations and receive a *final decision of the Secretary from the DAB*.") (emphasis added).

court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250. On cross-motions for summary judgment, the court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Target Constr., Inc. v. Baker Pile Driving & Site Work, LLC*, No. 12-01820, 2013 WL 4731369, at *2 (E.D. La. Sept. 3, 2013) (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

### B.      Judicial Review of the Secretary's Final Decision

Pursuant to 42 U.S.C. § 405(g), "[t]he Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing." In addition, "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Thus, the "Court's function is limited to determining whether the record, considered as a whole, contains substantial evidence that supports the final decision of the Secretary, as the trier of fact." *Roland v. Sebelius*, No. 3:08-cv-2084-K, 2010 WL 70855, at *2 (N.D. Tex. Jan. 6, 2010) (Kinkeade, J.) (citing

5

*Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)).  Courts "may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the Secretary," but will "set aside fact findings which are not supported by substantial evidence and will correct errors of law." *Roland*, 2010 WL 70855, at *2 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983)).

## III.    ANALYSIS

Defendant moves for summary judgment as to Plaintiff's claim that the Secretary's final decision should be reversed.  Def.'s Mot. 1, ECF No. 19.  Plaintiff moves for summary judgment in favor of its claim, urging that the Court either (1) reverse and/or vacate the Secretary's action and remand this case to the Secretary with an order compelling a determination that Seymour Hospital is eligible for conversion to CAH status; or (2) render final judgment in favor of Baylor, ordering the Secretary to grant CAH status to Seymour Hospital.  Pl.'s Br. Supp. Cross-Mot. & Resp. Def.'s Mot. 17, ECF No. 22.  The Court will first determine the appropriate deferential standard to apply in reviewing whether the Secretary's final decision was reasonable.

### A.    The Secretary's Decision Affirming CMS's Definition of "Primary Road" Is Not Entitled to *Chevron* Deference.

The Secretary argues that "[t]he Secretary's interpretation of the statute should be reviewed in accordance with *Chevron*."  Def.'s Resp. Pl.'s Cross-Mot. & Def.'s Reply Mot. 3, ECF No. 26 (citing *Chevron, U.S.A, Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984) (internal citations omitted)).  The Secretary argues that "the Supreme Court has clarified that[] 'the fact that [an] Agency . . . [reaches] its interpretation through means less formal than notice and comment rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise

its [sic] due.'" *Id*. at 4 (quoting *Barnhart v. Walton*, 535 U.S. 212, 221 (2002) (internal citations omitted)).  The Secretary urges this Court to adopt the Supreme Court's reasoning in *Barnhart*, a case holding that the Social Security Administration Commissioner's interpretation of the Social Security Act was entitled to *Chevron* deference.  *See, e.g.*, Br. Supp. Def.'s Mot. Summ. J. 14, ECF No. 20 (citing *Barnhart*, 535 U.S. at 215).  There, the Supreme Court reasoned that "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that *Chevron* provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue." *Barnhart*, 535 U.S. at 222.

Baylor asserts that the Secretary's final decision concerning the SOM is not entitled to *Chevron* deference, as "[t]he Supreme Court has held that interpretations contained in agency manuals, policy statements and enforcement guidelines lack the force of law, and do not warrant *Chevron* deference." Pl.'s Br. Supp. Cross-Mot. & Resp. Def.'s Mot. 10, ECF No. 22.  Baylor further argues that the Secretary's reliance on *Barnhart* is misguided, as that case involved a federal agency promulgating *formal* regulations with notice and comment.  *Id*. at 11 (citing *Barnhart*, 535 U.S. at 217).  Baylor argues that here, unlike in *Barnhart*, "CMS's interpretation purports to define a statutory term that is not defined in the regulations."  *Id*.

An "administrative implementation of a . . . statutory provision [only] qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was *promulgated in*

*the exercise of that authority*."[2]   *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) (emphasis added).   Here, "[t]he first half of this test is clearly satisfied: Congress has delegated general rulemaking authority with respect to Medicare to the Secretary of HHS, who in turn has delegated that authority to CMS."   *Estate of Landers v. Leavitt*, 545 F.3d 98, 105 (2d Cir. 2008); 42 U.S.C. § 1395hh(a)(1) ("The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter."); *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995) (recognizing "the Medicare statute's broad delegation of authority").

The Court then "consider[s] whether CMS has promulgated its interpretation in the exercise of its authority."   *Landers*, 545 F.3d at 105–06; *Mead*, 533 U.S. at 226.   "The overwhelming number of . . . cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication."   *Mead*, 533 U.S. at 230.   Here, the SOM "is not the product of notice-and-comment rulemaking or formal adjudication."   *Landers*, 545 F.3d at 106.   However, "less formal, nonlegislative interpretations are not for that reason alone disqualified from receiving *Chevron* deference."   *Id.* (collecting cases).   Nevertheless, the Court is "aware of few, if any, instances in which an agency manual, in particular, has been accorded *Chevron* deference."   *Id.*; *see also Freeman v. Quicken Loans*, 626 F.3d 799, 805 (5th Cir. 2010) ("[T]here is no indication that the [published policy statement] carries the force of law.").   "For example, the Fifth Circuit has denied *Chevron* deference to IRS revenue rulings, the CMS Medicaid Manual, FTC interpretive rules, and

---

[2]   The parties do not dispute that the SOM interprets the language set forth in the guiding *statute*, rather than the administrative *regulation* which contains language identical to § 1395i-4.   *See, e.g.*, Def.'s Br. Supp. Mot. Summ. J. 13, ECF No. 20 ("[T]he Secretary's interpretation of the *statute* should be reviewed . . . .") (emphasis added); Am. Compl. ¶ 13, ECF No. 25 ("[T]he interpretation contained in the SOM should not be followed because it is unreasonable and in conflict with the language and intent of the statute.").

litigation briefs" as not carrying the robust force of law characterizing notice-and-comment rulemaking and formal adjudication.  *Id*. at 805–06.  Here, this Court similarly declines to accord *Chevron* deference to the CMS interpretation of the term "primary road" within the SOM, holding that the SOM does not carry the force of law.

In declining to accord *Chevron* deference, the Court necessarily disagrees with the Secretary's argument that *Barnhart*'s reasoning applies to this case.  In *Barnhart*, the statute defined the term at issue, which the relevant agency interpreted through promulgating formal regulations. *See Barnhart*, 535 U.S. at 217.  In reaching its holding, the Supreme Court reasoned  that "[c]ourts grant an agency's interpretation of its own regulations considerable legal leeway." *Id*. (citing *Auer*, 519 U.S. at 461; *Udall v. Tallman*, 380 U.S. 1, 16–17 (1965)).  Here, however, CMS did not promulgate any formal regulations defining "primary roads" or "secondary roads," but instead defined "primary roads" for the first time in the SOM, a publication arising from "less formal, nonlegislative interpretation[]."  *See*, *e.g.*, *Landers*, 545 F.3d at 106.  Thus, the Court finds that *Barnhart* is inapplicable to the facts of this case.  Based on the foregoing, the Court declines to accord *Chevron* deference to the Secretary's final decision.

> **B.**   **Under *Skidmore* Deference, the Secretary's Decision Affirming CMS's Interpretation of "Primary Road" Is Reasonable and Should Be Upheld.**

To hold that the SOM "do[es] not fall within *Chevron* is not, however, to place [it] outside the pale of any deference whatever."  *Mead*, 533 U.S. at 234.  "*Chevron* did nothing to eliminate *Skidmore*'s holding that an agency's interpretation may merit *some* deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what

a national law requires." *Id*. (internal citations omitted) (emphasis added).  "[R]elatively informal CMS interpretations . . . are entitled to respectful consideration in light of the agency's significant expertise, the technical complexity of the Medicaid program, and the exceptionally broad authority conferred upon the Secretary." *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 590 n.6 (5th Cir. 2004) (collecting cases); *see also Cmty. Care, L.L.C. v. Leavitt*, 477 F. Supp. 2d 751, 757 (5th Cir. 2007) (citing *Reliable Home Health Care, Inc. v. Union Cent. Ins*., 295 F.3d 505, 512 (5th Cir. 2002) ("The Fifth Circuit has held that the [Medicare Provider Reimbursement Manual] is 'an interpretive guideline' to which *Chevron* . . . deference is not owed, and that the manual should merely be considered by courts as 'persuasive at best.'")).

Indeed, the parties agree that if *Chevron* deference is not applied, that CMS's interpretation is entitled to *Skidmore* deference*. See, e.g.*, Pl.'s Reply Cross-Mot. Summ. J. 2, ECF No. 27 ("CMS's interpretation of the term 'secondary road' in its agency manual is entitled to *Skidmore* deference."); Def.'s Resp. Pl.'s Cross-Mot. & Reply Mot. 14, ECF No. 26 ("Even if the Court agrees with [Baylor] that CMS's interpretation is only 'entitled to respect' under *Skidmore* . . . the Court should accord deference to the Secretary's interpretation.").  Under *Skidmore*, an agency interpretation is entitled to "respect according to its persuasiveness." *Mead*, 533 U.S. at 221 (citing *Skidmore*, 323 U.S. at 140).  The Supreme Court has held that "the rulings, interpretations, and opinions" of an agency charged with enforcing a statute, "while not controlling upon the courts by reasons of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140.  Under *Skidmore*, the weight afforded to agency rulings, interpretations, and opinions depends on "the *thoroughness* evident in its consideration, the *validity* of its reasoning, its *consistency* with earlier and later

10

pronouncements, and all those factors which give it power to persuade." *Small Bus. Loan Source, Inc. v. F/V St. Mary II*, 361 F. Supp. 2d 570, 574–75 (E.D. La. 2005) (emphasis added); *see also Mead*, 533 U.S. at 235 (noting that applying *Skidmore* deference may consider "thoroughness, logic, and *expertness*, its fit with prior interpretations, and any other sources of weight" in determining its overall power to persuade) (emphasis added). The Court will begin its analysis of *Skidmore* factors by considering the validity of the Secretary's reasoning: the "most salient of the factors that inform an assessment of persuasiveness." *Doe v. Leavitt*, 552 F.3d 75, 82 (1st Cir. 2009).

1.   Validity of Reasoning

"The 'validity' element of *Skidmore* analysis draws [] attention to whether an agency pronouncement is well-reasoned, substantiated, and logical." *De La Mota v. U.S. Dep't. of Educ.*, 412 F.3d 71, 80 (2d Cir. 2005). This inquiry focuses on "whether the agency has consulted appropriate sources, employed sensible heuristic tools, and adequately substantiated its ultimate conclusion." *Doe*, 552 F.3d at 82 (citing *De La Mota*, 412 F.3d at 80).

Baylor argues that the Secretary did not consult appropriate sources, as disregarding the "qualitative factors that affect travel time to and accessibility of rural hospitals, does not reflect thorough analysis or valid reasoning." Pl.'s Cross-Mot. Summ. J. & Resp. Def.'s Mot. 13, ECF No. 22. Baylor argues that "[u]nder CMS's interpretation, a road with [a] U.S. highway designation could never be a secondary road, regardless of its characteristics or condition." *Id*.

The Secretary asserts that the plain meaning of "secondary roads" in § 1395i-4 supports CMS's interpretation. Indeed, "[t]he plain meaning of words in the text of a statute constitutes the proper starting point for interpreting that statute." *Doe*, 552 F.3d at 83 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). As the Secretary points out, the Merriam-Webster

11

dictionary defines a "secondary road" as "a road not of primary importance," or "a feeder road."  *See* Def.'s Resp. Pl.'s Cross-Mot. & Reply Mot. 9–10, ECF No. 26 (citing "Secondary Road," Merriam-Webster.com, Merriam-Webster, n.d. Web. (retrieved Dec. 3, 2015); "Secondary-road," Dictionary.com Unabridged, Random House, Inc. (retrieved Oct. 13, 2015)).  Thus, the Secretary argues that "Interstate Highways and U.S. Highways form many important interregional and regional connections" and thus "it was not unreasonable for CMS . . . to conclude that federally numbered highways are likely to be bigger, better-maintained, and more well-traveled than state highways." Def.'s Br. Supp. Mot. 16, ECF No. 20.

Baylor contends that "the dictionary focus on the relative importance of the road may provide a meaningful distinction in other contexts, such as maps, [but] it does not do so in the context of the statutory scheme for determining reasonable hospital access in rural areas."  Pl.'s Reply Cross-Mot. 1–2, ECF No. 27.  Baylor avers that "[i]f the dictionary definition applied, it would be unlikely that there would be an area with only secondary roads. When using a comparative standard, at least one of the roads would be a primary road."  *Id*.

The Court affirms that the Secretary's factual finding that the plain meaning of the term "secondary road" focusing on the "importance" of the road was reasonable.  *See* Def.'s Resp. Pl.'s Cross-Mot. Reply 10, ECF No. 26 (emphasis added).  Baylor's argument that the dictionary definition is invalid necessarily assumes that the "comparative standard" distinguishing between roads is determined in an area between any two *hospitals*, rather than on any *large*r geographic scale, whether county, state, or national.  The commonplace definition of "secondary road" does not require that a  primary road be of primary importance to a particular area between any two hospitals.  Thus, because the commonplace definition does not make the inference that Baylor suggests, the Court

finds that the plain language of § 1395i-4 supports the Secretary's final decision as reasonable.

The congressional purpose animating § 1395i-4 also supports the Secretary's final decision. *See Doe*, 552 F.3d at 83 (considering congressional purpose within *Skidmore* "validity" analysis). The DAB recognized that the congressional intent of creating the CAH designation is to "provide[] for higher Medicare payments in an effort to maintain the availability of hospital services in rural communities."  Final Decision on Review of Administrative Law Judge Decision ("DAB Final Decision") 1,[3] ECF No. 18 (citing 72 Fed. Reg. 42,628, 42,806 (2007) (stating that the "intent of the CAH program is to maintain hospital-level services in rural communities while ensuring access to care")).

The Secretary argues that "the imposition of the mileage requirements itself illustrates that this purpose was not intended to benefit every hospital located in a predominantly rural environment. Instead, funding was to be narrowly targeted to a subset of rural hospitals that were less accessible and more isolated from other sources of hospital care than other such hospitals."  Def.'s Br. Supp. Mot. 9, ECF No. 20 (quoting DAB Final Decision 5, ECF No. 18).  The Act limits this extra funding to hospitals meeting certain criterion, depending on how the road is classified, and the Secretary asserts that "[a]dministrative efficiency justifie[s] developing a bright-line rule that would balance the goals without individual inquiry into each case."  Def.'s Br. Supp. Mot. 9, ECF No. 20.  The Court finds this to be a reasonable conclusion in light of the CAH designation's larger purpose of maintaining hospital-level services in rural communities while ensuring access to care.

The Secretary further supports the imposition of this bright-line requirement through

---

[3] The page numbers of the DAB Final Decision cited in this Order refer to the page numbers of the DAB Final Decision *only*, not to the larger filing within which the DAB Final Decision is included.

providing relevant legislative history.[4]  *See Doe*, 552 F.3d at 83 (considering legislative history within *Skidmore* "validity" analysis).  Before January 1, 2006, states could apply for a waiver of the minimum distance eligibility requirement by certifying that a prospective CAH was a "necessary provider" in an area otherwise failing to meet the bright-line distance requirements, much like the ultimate relief Baylor ultimately seeks.  *See*, *e.g.*, DAB Final Decision 6, ECF No. 18. Pl.'s Br. Supp. Cross-Mot. & Resp. Def.'s Mot. 4, ECF No. 22.   However, as of January 1, 2006, Congress grandfathered in "necessary providers" that were already certified via waiver, but eliminated this option for future applicants.  *Id.* (citing Medicare, Prescription Drug, Improvement, & Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2269, § 405(h); 72 Fed. Reg. at 42, 806 (discussing statutory change)); *see also* § 1395i-4 ("A State may designate a critical access hospital if the facility . . . [i]s certified before January 1, 2006, by the State as being a necessary provider of health care services to residents in the area.").

The Court finds that SOM's definition of primary road "advances the goal of uniformity by providing a consistent and principled method for calculating" access between hospitals when considering CAH applicants.  *Small Bus. Loan Source*, 361 F. Supp. 2d at 570.  "To decline to follow the guideline would, as this case aptly demonstrates, frustrate uniformity" by permitting hospitals an exception to their primary road access by using a qualitative analysis to determine the roads leading to and from the hospital.  *Id*.  Therefore, in considering the plain meaning of "secondary roads" in § 1395i-4, the congressional purpose of providing uniformity to further the

---

[4] The parties do not dispute that while § 1395i-4 does not specifically mention "primary roads," the language prescribing lesser distance requirements for "secondary roads" presupposes the existence of "primary roads." *See*, *e.g.*, Am. Compl. ¶ 10, ECF No. 25; Def.'s Br. Supp. Mot. 4–5, ECF No. 20.

broad goal of CAH designation, and the legislative act of closing the "necessary provider" waiver, the Court finds that the Secretary's final decision to impose the distance requirement was reasonable.

The Court next addresses how primary roads were deemed as such *within* that reasonable bright-line requirement. The parties do not dispute that CMS lacks specific agency expertise when it comes to evaluating road conditions. *See* Def.'s Br. Supp. Mot. 18, ECF No. 20; Pl.'s Cross-Mot. & Resp. Def.'s Mot. 11, ECF No. 22. The Secretary argues that while Defendants "do[] not have the resources to conduct case-by-case analysis of road conditions for all CAH applications," their secondary road determinations "rely heavily on maps produced by state and federal transportation authorities," a reasonable source to bolster its goal of "establish[ing] eligibility criteria for CAHs" to be consistently applied. Def.'s Resp. Pl.'s Cross-Mot. 13, ECF No. 26; *see also* DAB Final Decision 4, ECF No. 18 ("CMS lack[s] the resources and capacity for making case-by-case judgments about the driving characteristics of every stretch of highway in the United States" but bases its judgments on "objective criteria") (internal citations omitted). The Court, while not able to engage in fact-finding or reweighing of the evidence in evaluating this judgment, finds that the Secretary's decision is supported by substantial evidence. *See Roland*, 2010 WL 70855, at *2 (holding that a court "may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the Secretary"). Combined with the congressional goal of promoting uniformity, the Secretary reasonably utilized U.S. Geological Survey standards in order to enforce its bright-line distance requirements.

Furthermore, the Court is unaware of similar challenges to the definition of "secondary road" in federal court, and only one similar case facing agency review, which cited the Secretary's final reasoning in this case. *See, e.g.*, *Sai Kwan Wong v. Doar*, 571 F.3d 247, 262 (2d Cir. 2009)

("Finally, we note that [the SOM] has never faced a serious challenge in either federal or state court . . . . That this aspect of [the SOM] has been challenged so infrequently is further evidence that the rule is well-settled."). Thus, while certainly not dispositive, the lack of similarly situated challenges lends further support to the strength of the Secretary's reasonableness.

The Court is sympathetic to Baylor's position, as the Court is not presuming at this time that another reasonable interpretation of § 1395i-4 exists that would allow Baylor to obtain CAH status. However, reviewing the factual findings de novo is not within the purview of this Court.  *See Roland*, 2010 WL 70855, at *2.  Here, the Secretary adopted "a different reasonable interpretation, which should be given deference." *Cmty. Care*, 537 F.3d at 551 n. 11; *see also* DAB Final Decision at 5, ECF No. 18 ("The fact that CMS could have constructed other bright-line rules, using different approaches, does not mean that the rule it chose to adopt is unreasonable.").  "[G]iven that the Secretary's interpretation is reasonable and consistent with statutory and regulatory requirements, and given that we are dealing with a 'complex and highly technical regulatory program,'" this Court finds that the validity of CMS's interpretation weighs in favor of granting deference to the Secretary's final decision.  *Id*.

## 2.   Thoroughness and Consistency With Earlier and Later Pronouncements

The Secretary argued that CMS's "July 2015 updates to the SOM[] demonstrate both consistency and a thorough the [sic] analysis of the CAH distance provisions." Def.'s Resp. Pl.'s Cross-Mot. & Reply Mot. 14, ECF No. 26.  The Court is not persuaded by this argument, as this case was already pending when this guidance was published, and the guidance was published several months after the Secretary's final decision currently under review.  *See* Original Compl., ECF No. 1 (filed March 13, 2015); *see also Luminant Generation Co. v. U.S. E.P.A.*, 675 F.3d 917, 928 (5th

16

Cir. 2012) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.")).

However, the Secretary cites additional evidence which supports granting the Secretary's final decision deference as to this point.  First, the Court has already determined that CMS's imposition of a bright-line rule as to the definition of "primary road" was reasonable.  *See supra* Part III.B.1.  Here, "[t]here is no evidence that the Secretary has ever interpreted the word[s] "[primary roads or secondary roads]," as used in the [SOM], in a manner inconsistent with the interpretation that [s]he advances here." *Doe*, 552 F.3d at 82.  Rather, as the Secretary notes, the SOM is published on Defendants' website and frequent amendments are announced in the Federal Register.  Def.'s Resp. Pl.'s Cross-Mot. & Reply Mot. 13, ECF No. 26.  Furthermore, the SOM definition of "primary roads" is applicable to all applicants.  *Id.*

"Normally, greater deference is due to an interpretation that is not merely ad hoc . . . but is applicable to all cases." *Doe*, 552 F.3d at 81 (internal citations omitted); *see also Landers*, 545 F.3d at 110.  The consistent and several-year imposition of the SOM definition supports granting deference to the Secretary's final decision.  *See Doe*, 552 F.3d at 82 (collecting cases).

3.   <u>Expertise</u>

This Court is "mindful of the Supreme Court's repeated suggestion that HHS interpretations, in particular, should receive more respect than the mine-run of agency interpretations." *Landers*, 545 F.3d at 107 (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)); *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981)).  In fact, "in cases such as those involving Medicare or Medicaid, in which CMS, 'a highly expert agency[,] administers a large complex regulatory scheme in

17

cooperation with many other institutional actors, the various possible standards for deference'—namely, *Chevron* and *Skidmore*—'begin to converge.'" *Landers*, 545 F.3d at 107 (quoting *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 138 (2d Cir. 2002) (recognizing the "considerable deference" afforded to regulations concerning Medicare)). The Court additionally notes that particularly in light of the enforcement of Medicare, "[e]xpertise . . . counsel[s] in favor of honoring the Secretary's interpretation." *Doe*, 552 F.3d at 82; see also *Landers*, 545 F.3d at 107 (noting the high degree of expert knowledge required to run programs such as Medicare and Medicaid). "Indeed, the Secretary is charged with determining whether and when" a given hospital meets CAH qualifications. *Doe*, 552 F.3d at 82; § 1395i-4.

The Court has already determined that CMS employed reasonable resources to aid in its determination of what constitutes a primary or secondary road, which aids in its broader goal of promoting effect rural health care through determining which hospitals meet CAH standards. *See supra* Part III.B.1. "Thus, the area in which the disputed interpretation operates is within the heartland of the Secretary's expertise" in furthering its purpose," and the Court finds that this factor weighs in favor of granting deference to the Secretary's final decision. *Doe*, 552 F.3d at 82.

For all of the aforementioned reasons, the Court finds that the *Skidmore* factors counsel the Court to grant deference to the Secretary's final decision, as it is supported by substantial evidence and lacks any clear error of law. The Court therefore concludes that no genuine dispute as to any material fact exists, and that judgment as a matter of law is appropriate in favor of Defendants. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**.

## IV.    CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (ECF No. 19) is

**GRANTED**.  Plaintiff's Cross-Motion for Summary Judgment (ECF No. 21) is **DENIED**.  A

Final Judgment will issue separately.

**SO ORDERED** on this **19th day** of **February, 2016.**


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

19